IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | : | MDL 1586 |
| | : | |
| In re Excelsior, Federated and Scudder | : | Case No. 04-MD-15861 |
| | : | |
| [Scudder Sub-Track] | : | No. 04-1298 |

...o0o...

## **MEMORANDUM**

On September 29, 2004, the plaintiffs in this investor class action, as in many other family of fund subtracks in this mutual fund MDL litigation, filed a consolidated amended complaint ("CAC") alleging various claims under the Securities Act, Exchange Act, Investment Company Act, and state law. In a memorandum dated November 3, 2005, later memorialized in a February 2006 order, after independently reviewing and agreeing with the holdings in Judge Motz's *Janus* Investor Class Opinion, 384 F.Supp.2d 845 (D.Md. 2005) I granted the motion to dismiss as to the Securities Act and certain other claims. I denied it as to the Exchange Act claims against Deutsche Bank AG and other Scudder/Deutsche defendants. I also denied the motion without prejudice as to the ICA § 36(b) and 48(a) claims against those defendants and denied the motion without prejudice as to the Exchange Act claims against UBS Wealth Management USA ("the UBS defendants"). On June 7, 2006, on a motion to reconsider, I denied the motion to dismiss as to the ICA § 36(b) claims but granted it as to the § 48(a) claims.

On April 4, 2006, the plaintiffs were granted leave to file a second consolidated amended class action complaint ("SAC") adding new defendants and deleting denied claims. A new round of motions to dismiss followed, which now are ready for ruling.

The SAC brings claims against, first, Deutsche Bank AG, Deutsche Asset Management,

Inc. ("DeAm"), Deutsche Asset Management Investment Services, Ltd. (DeAMIS"), new defendant Deutsche Investment Management Americas, Inc. ("DeIM"), Scudder Distributors, Inc. ("SDI"), and Investment Company Capital Corporation ("ICCC"), collectively referred to as the Scudder/Deutsche defendants, under the Exchange Act §§ 10(b) and 20(a).[1]

First, whether or not it is correctly referred to as "law of the case," I have adopted the reasoning and conclusions of Judge Motz in his *Janus* Investor Class Opinion and do not intend to revisit those rulings at this stage of the litigation. The SAC, like the CAC, adequately alleges in its "First Claim" that the Scudder/Deutsche defendants, with the requisite scienter, engaged in a deceptive scheme under Rule 10b-5 subsections (a) and (c). As in *Janus*, the Scudder/Deutsche defendants are alleged to have recognized the harmful effects of market trading and late timing on long-term investors and nonetheless, inconsistent with statements in their prospectuses, to have entered into at least ten separate negotiated market timing arrangements to permit timing in specific funds. Motivation also is alleged. This is sufficient under *Janus* and consistent with my ruling on November 3, 2005.

The defendants now attempt to have the claim dismissed because, in addition to the specific negotiated agreements, the SAC alleges "under the radar" market timing and late trading, described as market timing and late trading which the defendants "knowingly or recklessly permitted . . . to occur". SAC ¶ 207. The plaintiffs allege, *inter alia*, that some of the defendants with negotiated arrangements continued to time, with Scudder's knowledge, even

---

[1] The ICA §§ 36(b) and 48(a) claims have been dealt with by prior order. All state law claims also have been withdrawn by the plaintiffs. All claims against the Scudder Officer defendants have been tolled and dismissed without prejudice; all claims against the Scudder Trustee defendants were voluntarily withdrawn and dismissed with prejudice. (See docket entry no. 835).

after the arrangement had supposedly been ended, and that the Scudder/Deutsche defendants were well aware of the problem and knew timing was continuing particularly because of the high volume of asset turnover in certain funds.

Whether scienter ultimately can be proved as to all aspects of the market timing and late trading scheme is not dispositive at this stage of the case.  Certainly there is a difference between a failure, even a negligent failure, to detect illegal activity, and recklessness in the face of conduct "so obvious that the defendant must have been aware of it."  *Ottmann v. Hanger Orthopedic Group*, 353 F.3d 338, 343 (4th Cir. 2003); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F.Supp.2d 334, 368 (D. Md. 2004); *In re Acterna Corp. Sec. Litig.,* 378 F.Supp.2d 561, 570 (D. Md. 2005).  Further, as the plaintiffs concede, the Scudder/Deutsche defendants would not be liable for timing by traders who deceived the funds by successfully hiding their trading practices.  (Pls.' Opp. Scudder/Deutcsche at 10).  The SAC, however, contains more than sufficient allegations to permit the First Claim to go forward under *Janus* without addressing "under the radar" timing as a separate basis for the claim.

The Scudder/Deutsche defendants raise several other issues.  As to the statute of limitations, the plaintiffs concede that claims for fraudulent conduct prior to July 30, 1999 are time-barred.  (*Id.* at 20, n.14).  The issues of holder standing and standing generally were dealt with or appropriately deferred in *Janus* and will not be revisited at this time.  Similarly, the claims under § 36(b) of the ICA withstand the motion to dismiss; the claims under § 48(a) do not and have been dismissed.  Control person liability under § 20(a) of the Exchange Act has been adequately pled as it was in the CAC.

Also named in the SAC, as new defendants, are various timers/traders.[2] Some had specific negotiated agreements with Scudder from which they profited. *See* SAC ¶¶ 163-68 (Peconic); 169-75 (Millennium); 177-90 (Maillot Jaune); 132-45 (Cooper and Yellen); 146-50 (Savino and Chung).[3] The allegations of scheme liability as to these defendants are sufficient under the reasoning in *Janus*, 384 F.Supp.2d at 857-58. Similarly, the SAC names three companies, Aurum, Pritchard, and Trautman, which are alleged to have engaged in late trading by use of the BAS "box." Consistent with *Janus*, this adequately alleges their involvement in a deceptive scheme under Rule 10b-5.[4] With the assistance of BAS, which provided the "box" to Trautman in 2001 and Pritchard in 2003, Trautman late traded approximately $8.6 billion in third-party mutual funds and Pritchard late traded approximately $4.9 billion in third-party

---

[2] These defendants include:
    Millennium International Ltd.
    Daniel Calugar
    Security Brokerage, Inc.
    Peconic Capital, LLC
    Peconic Offshore Fund Corporation
    Maillot Jaune Capital, LLC
    Bank of America Securities, LLC
    Canary Capital Partners, LLC (and other Canary companies)
    Edward J. Stern
    Aurum Securities Corp.
    Aurum Capital Management Corp.
    Pritchard Capital Partners, LLC
    Trautman Wasserman & Co., Inc.
    William Savino
    Christopher Chung
    Paul Cooper
    Michael Yellen

This case is stayed, however, as to BAS, Canary, and Stern.

[3] It does not appear that Maillot Jaune has filed either an answer or a motion to dismiss.

[4] Aurum answered the SAC and did not file a motion to dismiss.

4

mutual funds, for their clients and their own accounts.  (SAC ¶¶ 214, 223-24, 227, 230-32.)  Contrary to the defendants' suggestion that such allegations have been found insufficient in other cases (Pritchard Reply Mem. Ex. 3), the *Janus* opinion recognized that a scheme effectuating late trading, particularly through a device such as the "box," is inherently fraudulent.  *Janus,* 384 F.Supp.2d at 856.  The court in *Janus* denied Trautman's motion to dismiss the Exchange Act claims and did not mention Pritchard.  *Id.* at 872 (see also Investor Class Order, docket entry no. 1387 in 04-15863.)  A sampling of the orders cited by Pritchard reveals that some involve fund derivative, not investor class complaints (e.g. *Karlin v. Amvescap,* docket entry no. 614 in 04-15864), or that the dismissal was with leave to amend because the complaint did not make the same late trading allegations as in other cases.  (*Cohen v. Strong*, docket entry no. 618 in 04-15864; *see also Dukes v. Columbia Acorn Fund*, docket entry no. 1451 in 04-15863, late trading and use of the "box" not alleged).

The statute of limitations, however, presents a different question as to some of the newly-added defendants.  It has been raised as a complete defense in the motions to dismiss filed by Millennium, the Calugar defendants, and Trautman.[5]  All parties appear to agree that the appropriate standard under Fourth Circuit law is that stated in *Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir. 1993) ("Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam."); *see also In re USEC Sec. Litig*., 190 F.Supp.2d 808, 817, 821 (D.Md. 2002).[6]

---

[5] Pritchard does not raise a statute of limitations defense in its motion.

[6] The attempt to place notice inquiry as far back as 1999 because of the shareholder letter and prospectus supplements warning of the risks of market timing is not persuasive, when those same documents indicated that additional steps would be taken to prevent timing and the funds

5

First, the plaintiffs' claims against Daniel Calugar and Security Brokerage, Inc. appear time-barred. Nothing in the SAC refers to any improper market-timing activity by Calugar after August 1999. The attempt to rely on an inference that because Cooper and Yellen continued to market time into and after 2001, Calugar did so as well (a connection not even explicitly made in the SAC, *see* ¶ 141) is not sufficient. Further, the publicly filed complaints, including the SEC action (CV-S-03-1600-RCJ-RJJ) (D.Nev.) alleging that Calugar, through Security, market timed "various" mutual funds, although "most of" the trades were made through Alliance and MFS, (*see Calugar* Reply Brief, Ex. A), should have put the plaintiffs on notice of the possibility of similar activity in the Scudder funds. *See also MFS Fund Distr., Inc. v. Calugar*, Case No. 1:04-CV-666 (AKH)(S.D.N.Y.) and *Kaplan v. Security Brokerage, Inc.*, Case No. CV-S-03-1644-KJD-RJJ (D.Nev.).

Second, Millennium suggests that the publicity surrounding the guilty plea and SEC settlement entered into by former Millennium trader Steven Markovitz in October 2003 was sufficient to put the plaintiffs on inquiry notice that Millennium may have engaged in improper market timing activity in Scudder funds. The articles referred to by Millennium, however, are neither cited in, relied on, integral to, or attached to the CAC or the SAC, and ordinarily may not be relied on for a motion to dismiss. *Phillips v. LCI International, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *In re Cree, Inc. Sec. Litig.*, 333 F.Supp.2d 461, 470 (M.D.N.C. 2004). On the other hand, the publicity, which unquestionably was extensive, arose from a public SEC enforcement action and guilty plea. Further, the plaintiffs are incorrect to contend that they were not on

---

are alleged instead to have concealed from investors specific agreements to permit that very practice.

notice until they received proof in the form of Scudder's e:mails produced in 2006. *See Brumbaugh*, 985 F.2d at 162. Taking judicial notice under Fed.R.Ev. 201(b) of the fact of the public SEC action and the guilty plea leads the court to conclude that the claims against Millennium are time-barred. *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir. 2004) (court can take judicial notice of the filing of a complaint, though not the facts alleged therein); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (court can take judicial notice of guilty pleas).

As to Trautman, however, no similar form of notice has been identified. In the CAC, plaintiffs stated that: "involvement of the defendants in the growing mutual fund scandal was revealed on January 12, 2004, at which time Deutsche Asset Management issued a media statement revealing that it had identified market timing arrangements with an investment advisory [firm] in Scudder funds." (CAC ¶ 147.) Trautman relies on that to argue the plaintiffs were on inquiry notice of their claims. While it is a close question, that media statement did not in any way identify Trautman as being involved in timing, and consequently these claims will not be dismissed as a matter of law.

As to the Peconic defendants, standing and personal jurisdiction will continue to be deferred. Claims arising from conduct prior to January 19, 2001 are time-barred.[7] The difference in language between the prospectuses quoted in *Janus* and those quoted in the SAC as to Peconic is not sufficient to remove Peconic from the scope of scheme liability under 10b-5(a)

---

[7] The plaintiffs identify January 19, 2006, as the date limitations was tolled by the filing of their motion for leave to amend. *See* Pls. Oppos. Timers at 18-19. This appears to be correct. *See Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993); *Mayes v. AT&T Information Systems, Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989); *cf. U.S. ex rel Matthews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003).

and (c) for conduct occurring after January 19, 2001, however, and Peconic is alleged to have market-timed Scudder funds into 2002.  (SAC ¶¶ 167-68.)

As to defendants Cooper, Yellen, Savino, and Chung, who had specific negotiated agreements with Scudder and engaged in extensive market timing, no argument has been advanced to distinguish them from the holdings in *Janus*, 384 F.Supp.2d at 857-58.  Their motions to dismiss will be denied.

Exchange Act claims under § 10(b) also have been brought against UBS Paine Webber, UBS Wealth Management USA, and new defendant J.C. Bradford (the "UBS Defendants"), combined with § 20(a) control person claims against UBS PaineWebber and UBS Wealth Management USA.  As the UBS defendants point out in their motion, the court's earlier denial of their motion to dismiss depended significantly on what was interpreted to be an allegation that UBS had engaged in market timing directly for its own accounts.  This is no longer alleged in the SAC, and the plaintiffs concede they have no present evidence of proprietary trading, although they suggest it may be found in the course of discovery.  (Pls.' Opp. Timers at 13 n.4.)  Further, the New Jersey Bureau of Securities Consent Order entered January 1, 2006, to which the plaintiffs frequently refer, finds that: "Although UBS facilitated market timing transactions by hedge fund or other Firm customers, it did not engage in any market timing activities for its own behalf in any proprietary accounts."  (Pls.' Opp. Timers, Ex. 1, ¶ 2.)

While an allegation of proprietary trading is not essential to survive a motion to dismiss on the 10b-5 claims, without that there must be some other clear allegation of participation in a manipulative and deceptive scheme.  Admittedly, the SAC describes extensive market timing carried out by UBS brokers, including the four new defendants Cooper, Yellen, Savino, and

8

Chung, which was knowingly facilitated by UBS.  The two additional specific allegations are that UBS permitted the entry of mutual fund orders without listing broker numbers (SAC ¶ 198) and maintained a "Market Timing Desk" to make and support market timing trades in mutual funds.  (SAC § 202.)  While it may be a close question, I do not find these allegations equivalent to those against Bank of America and Bear Stearns outlined in the *Janus* opinion, 384 F.Supp.2d at 862.  Those defendants were alleged to have provided a trading platform (BAS) or a routing system (Bear Stearns) that allowed late trading and to have permitted deceptive strategies such as disabling a time stamp function on the (Bear Stearns) routing system.  Late trading is inherently fraudulent, and such acts were found "manipulative or deceptive" on their face.  *Id.* at 862.  Similarly, an allegation that Prudential employed a "shotgun system" to spread trades across various funds was found not sufficient to state a claim; on reconsideration, allegations in the proposed amended complaint concerning specific deceptive practices designed to avoid detection were found to state a claim.  (*See Saunders v. Putnam*, JFM-04-560, docket entry no. 2102 in 04-15863).  The present allegations against UBS are akin to the initial allegations against Prudential which were dismissed.  *Janus*, 384 F.Supp.2d at 860.

      While the § 10(b) claims are not sufficient, the § 20(a) claims under the Exchange Act as to UBS PaineWebber and UBS Wealth Management USA will not be dismissed, as there are specific allegations of UBS PaineWebber's control over primary violators Cooper, Yellen, Savino, and Chung in at least the 2001-early 2002 time period.[8]  *See Janus*, 384 F.Supp.2d at 855 n.8.

---

[8] There are no such specific allegations against UBS Wealth Management, but it is alleged that UBS PaineWebber was "rebranded" under that name in 2003.  (SAC § 56).

9

In summary, the motions to dismiss are denied in part and granted in part as stated in this memorandum. Counsel should confer and propose an order (agreed upon as to form only) implementing these rulings within 30 days.

 February 9, 2007                                                                                                  /s/
              Date                                                                                             Catherine C. Blake
                                                                                                     United States District Judge